May it please the court, I represent Mr. Munoz-Navarro and I work for the Federal Public Defender. Mr. Munoz-Navarro was sentenced in excess of his correct statutory maximum, so his sentence should be remanded for resentencing. The defendant had five arguable ACCA strikes, but the government failed to prove with cognizable evidence that three of them occurred on separate occasions, and two more of them attempted escape without a deadly weapon, and evading arrest without a vehicle, without a deadly weapon, and without bodily injury, do not constitute violent felonies. So addressing the separate occasions issue, three of these arguable... Well, the appeal waiver in this case reserves the right to appeal a sentence in excess of the statutory maximum. A sentence, if I'm correct about ACCA, then a sentence of 15 years is above the statutory maximum, and the most plausible reading of that is that it means the correct statutory maximum, not merely any statutory maximum selected by the district court. But it would mean whatever statutory maximum the parties agreed to when they constructed the plea agreement. I don't think that's so. The defendant said... The appeal waiver provisions in the plea agreement, and it says, you know, anything above the statutory maximum, and in the top of the plea agreement it says statutory maximum is life. Well, the top of the plea agreement, first of all, it uses a different term, it says maximum punishments. If we would... If we expected this... If we thought that the parties were defining a term in the top of the agreement that they planned to use in the bottom of the agreement, you know, as a term of art, then we would expect them to use the same term. But those parts of the plea agreement also serve very different functions. The first of them provides notice to the defendant, and the second one identifies the arguments that the defendant intends to waive. If the defendant hadn't agreed in the first part that the statutory maximum might be life, he wouldn't have been potentially able to plead guilty, potentially able to plead guilty at all. The case is really not distinguishable from House and from Harris, which are other cases where a term in House, the defendant agreed to waive a sentence below the statutory maximum and an ACCA challenge was held to be cognizable under that agreement. But House is the one where the sentence of statutory maximum was the hypothetical, right? Because the actual language is in excess of the guidelines? Am I right? There's two. There's two. I might be messing those two up. I think Harris is the guidelines and House is the statutory maximum. You're right. So, House is unpublished, but it is... Okay, so Harris is the published decision, and there the court was saying, well, we're trying to interpret in excess of the guidelines. And then in a statement, a dicta statement says, well, imagine if it said yes. Is that correct? It is. And then in House, it did precisely that. And so, one point I want to make about the importance of having consistent precedent in this area is that a plea agreement is unlike other contracts in that the first court to address what it means is an appellate court, typically, and it can't take new evidence about what the plea agreement meant. So it's important, it's especially important in those circumstances that the parties be able to predict that a term that meant one thing in case A means the same thing in case B because this court will not be able to explore differences between case to case in the record in order to determine what that means with the same finesse that a district court will be able to do. So there's a risk of factual error about what the parties meant in that case. But 922G is going to take you to 924, right? And so then it's going to be 924E, that's life, right? That's right. Okay. So here, if I'm not mistaken, in the plea agreement, he said statutory maximum is life. Then the indictment always said 924E. And then at rearrangement, did anybody ever say 924A2? Did anybody ever refer to that as the limiting? No, nobody did. But suppose we take that for all it's worth and we say the defendant believed the statutory maximum would be life. That doesn't mean that he agreed to suffer a life sentence if that turned out to be wrong. I thought we had a case that said you cannot agree to waive an illegal sentence in an appeal waiver. And whether it's in your guilty plea or whatever, if a sentence is illegal, you can raise it on appeal. And it would seem to me that I thought we had a case law that said if it's above the statutory maximum, it's an illegal sentence, and appeal waivers don't apply. I know there's cases that say it can't be forfeited. But those cases, and Vieira, for instance, would be a case like that. I don't know that there's a case about a statutory maximum, I mean, an appeal waiver about that. But I would agree that those cases certainly demonstrate a strong preference for the merits when the sentence is potentially illegal. And so at the minimum... Well, there's a difference between an illegal sentence and one that's merely erroneous. I mean, a sentence that arises from, say, a guideline error but is within the statutory maximum is an error. But it's not illegal in the way that this court has used that term. I mean, this court distinguishes in, like, supervised release cases between a sentence above the statutory maximum for re-imposition of supervised release or imprisonment. I'm not sure he got very much. I mean, I think he got the third point. He did get the third point. Then he can, as in the Williams decision, say, I've got an appeal waiver to the statutory maximum, which could be one or the other. In Williams, they explicitly negotiated the waiver around that possibility. That's right. But there is no case that says, in the absence of that, the appeal waiver doesn't mean that. The parties use a general term here, statutory maximum punishment. If they meant life, they could just say life. And statutory maximum punishment means logically, naturally, red, means whatever the statutory maximum actually is. And the statutory maximum actually… The district judge said life. It's life. He may have, but I'm not sure that means that the defendant agreed that he would not appeal if that were wrong. The term statutory maximum punishment, as a general term, allocates the risk of error on that question to the government. So moving to the separate occasions issue, this case is really not distinguishable from Fuller, from United States versus Fuller. In Fuller, there were two indictments, and they had the same date in them. And in the defendant… And this court said because those indictments failed to exclude the possibility of parties' liability, then they did not show on their face that… Or they did not show that the defendant had burglarized these two homes at different times. The government would understand the difference between this case and Fuller as that in Fuller, when the defendant got up and affirmatively testified, these occurred at the same time. And so it would understand Fuller to mean that to be a case where the government first satisfied its burden to show with Shepard documents that they occurred at separate times, and then the defendant rebutted it. But the reason that… There are two reasons that's not a very persuasive reading of Fuller. The first reason is that the district court in Fuller affirmatively found that Fuller was not telling the truth. That's on page 276 and 278 of Fuller. It says the district court found Fuller's testimony was not credible. In no area of the law does perjury, does testimony that a district court finds to be false, to be not credible, carry a party's burden of rebuttal. So the more likely reading of Fuller is that it stands for the proposition that indictments that have the same date on them do not carry the government's burden to show with Shepard documents that they occurred at separate times. The second reason that's not a very persuasive reading of Fuller, the government's is not a very persuasive reading of Fuller, is that Fuller says that we are limited to Shepard documents when we address the separate occasions requirement of ACCA. So the defendant's testimony in Fuller would not have even been cognizable under the standards set forth in Fuller. Fuller and Shepard are about avoiding mini-trials, limiting us to the Shepard documents. They're not about compelling one party, the defendant, to initiate a mini-trial with testimony or with rebuttal evidence. The government also seeks to distinguish Fuller on the ground that we have judicial confessions in this case, and we didn't have them in Fuller. We only had indictments. But there are three reasons that's not a very persuasive. The judicial confessions, those are the ones in the resumes, the three times set out in the factual resume? In the state court, they call them judicial confessions. But wasn't there a factual resume associated with the guilty plea here? There was. And that listed out three predicates? I think it listed out three predicates. I don't know that it was those precise three. I think the evading arrest was missing from those, but I think it had two. Yeah, but those were on separate dates. Would those suffice alone, around the August 19th question? If you were right on the Shepard document point, the Fuller analysis of the August 19th events? I would have to win one of two more arguments. The first of them is that attempted escape without a deadly weapon is not a violent felony. The court's never reached that question. Is that something affected by Johnson? It very well could be. Actually, all of this could be affected by Johnson. The only thing that's clear that's an enumerated offense under Johnson is burglary. If Johnson says, and that's preserved in the briefing and below in this case, but it's foreclosed as of now. But if in a month Johnson says the residual clause is unconstitutionally vague, we have one predicate in this case. So I would have to win one of two other arguments. That attempted escape without a deadly weapon does not constitute a violent felony, or that evading arrest without a vehicle, without a deadly weapon, without serious bodily injury does not constitute a violent felony. And I want to make two points that are common to those two questions. The first of them is that the Supreme Court has in recent years, at least since Begay, shown a preference for statistical evidence to confirm, or even sometimes in preference to, an intuition about what actually causes a risk of injury. In Begay, in Chambers, in Sykes, it relied very heavily on statistical evidence, or at least evidence compiled by the Sentencing Commission about what actually causes injury. So we may, it is logical, we can have an intuition that both of these offenses cause a risk of confrontation in those cases. But if that were so, then we would expect to see higher numbers of injury in cases involving evading arrest with a vehicle, because those all involve a risk of a confrontation, plus a car wreck. And higher risk of injury, higher numbers of injury in successful escapes, because in 92%, according to the Bracco and Kolb study, in 92% of cases of successful escape, there is ultimately a recapture. So in all of those cases, eventually, we probably have the confrontation that we're worried about in attempted escapes, plus attempted escapes also involve all the cases where the defendant doesn't even get out of the building, or necessarily even get very close to getting out of the building. So the statistical evidence in those, I think, fails to confirm the intuition that those offenses cause a risk of injury. The second point I want to make about both of those other two offenses is that it's important to look carefully at the statute of conviction in those cases. Both of those offenses the defendant was convicted of are parts of a system of lesser included offenses in those cases. So when we examine the typical case, say, of evading arrest without a vehicle, we should also take into consideration that the government could have pled, prove, and gotten a higher penalty range if it had also pled and proven a deadly weapon in those cases. So the typical case should really be defined in that case as cases involving evading arrest that do not involve a deadly weapon. If we don't do that, if we say that the typical case involves facts that the government could have proven, could have pled, but didn't, then we encounter two risks. The first one is that we are potentially holding the defendant liable for facts he had no capacity to contest, which Descamps tells us is a problem in applying the categorical approach. And the second one is we are potentially depriving defendants of the benefit of their bargain, which Taylor says in plea agreement cases is a consideration in favor of not finding offenses to be violent felonies. I think I may have returned my reserve for rebuttal. Thank you. May it please the court, Brian McKay on behalf of the United States. Just a few days before trial was set to begin in this case, Mr. Munoz-Navarro at that point decided that he would enter into a plea agreement and into an agreement in which he explicitly agreed with the government that the statutory maximum punishment in this case was life in prison. And as Judge Higginson pointed out, then days later at rearrangement, when it became apparent to the court that there was a typo in the plea agreement, the district court stopped the proceedings and drilled down on this issue. And once the court honed in on this issue, it was the defendant and his attorney both readily confirmed that they understood this was a 923E1 case and they wished to proceed with the rearrangement with that understanding. And, of course, that made perfect sense because, after all, in the plea agreement, they explicitly agreed that was the statutory maximum. And it's well established that this court, in construing an appellate waiver, looks to the plain meaning of the waiver in accord with the intent of the parties at the time they executed the agreement. And here the record is conclusive. It is uniform in establishing that at the time they executed this plea agreement, they understood that the term statutory maximum sentence meant a life term in prison. Now, counsel... This looks like fairly standard language that we see in every plea agreement. Do we have to, as you say, drill down in every case to see what they were really talking about? No, you don't have to in every case. In this case, it's readily apparent. And cases such as Bond and Cortez and Murray tell us that when we're trying to discern what it is that the parties intended, we look at the record. And absent any indication in the record that they assigned a special meaning to a term, then we apply the standard definition, which the court did. And, for instance, I think one of my best examples is United States v. Keele, where it was a different term, but the court did just that, looked to the plea agreement, looked to the rearrangement transcript, and said it's apparent, quite apparent, that the parties understood that the term, that restitution was included in the term sentence when the defendant waived his right to appeal his sentence. And Murray tells us that when the parties assign a certain meaning to a term, that that meaning prevails over even a contrary meaning that's assigned by the Supreme Court. And with respect to Harris, he is relying on Harris and House, and I would point out that in House you had a government concession. The government conceded that there was an issue there, and I don't think that Harris really controls this issue. I'm sorry, House. Harris spoke of this issue in dicta, and it did so really divorced from any factual record. And I don't take exception to Harris in what it said, in saying that if there's no evidence that the parties intended a certain meaning, then we wouldn't do what, you know, we would do just as the court said in Harris. But here, where there was, where the record demonstrates there was a certain meaning given to this term, we know from the prior cases, Bond and Cortez in particular, that we go to that meaning. Here, the parties intended that and understood and explicitly agreed that the statutory maximum was life. And I would – When does the record reflect the defendant first said, I don't have the requisite predicates? When does that first show up? I believe it was four or five months later in objecting to the PSR. At the time they entered into the plea agreement, it's uniform that everyone understood, and again, the court made it pellucid that everyone understood this is a 924E1 case, maximum is life. It was four months later, after another attorney had entered on behalf of Mr. Munoz, and during the sentencing proceedings that he first raised this issue. And I want to point out, the government never contended that the plea agreement operated as some sort of judicial admission that couldn't be rebutted. He actually did litigate this issue. He litigated it to an Article III judge. That judge considered his arguments and ruled against him. What I'm saying here is that he simply gave up his statutory right to litigate it beyond that point on appeal. The three predicates, though, the plea agreement doesn't say, and these are the three predicates. They identify three predicates, but they don't say those qualify. Is that fair to say? That's fair to say. They don't explicitly say that. I think that if he was simply admitting to a 922G1, an A2 offense, he wouldn't have acknowledged three felonies. He only needed to acknowledge one. And to answer Your Honor's question, to opposing counsel, those three predicates were one of the burglaries from August 2008, the attempted escape, and then the evading arrest that was enhanced, that was on foot. So whether sufficient gets around the different occasion problem inherited in August 19? Absolutely. Would it be a logical inference that you agreed to those three, because at the time you thought the three were simultaneous? Or unfair to say? That's a possible inference. I don't see anything in the record that pushes us toward that inference as opposed to anything else. But certainly it was fully litigated during the sentencing proceedings. But if we go that route, then why would we have to wait for Johnson? Assuming the waiver doesn't apply. If the court doesn't enforce the waiver, then it may be prudent to wait for Johnson. I acknowledge that. Back on the waiver, he isn't getting – there's a little bit of illogic to what he reserved. He's reserving a right to challenge a sentence above the maximum, but in the same breath he's saying the maximum is life. So what's life? Well, keep in mind, as Your Honor, Judge Owen had pointed out, this is standard language, and this is language that has been – But it is illogical for the defendant. What did he get? Did the government recommend low end? What was the deal here that he just got the third point? All appearances, and if I may quibble a little bit with the court's language, it's not that he just got the third point. He received the third level of acceptance when he pled guilty on the eve of trial, after the government had indisputably prepared, filed its witness list. I believe it was on Monday when the plea documents were entered. Trial was set to begin on Friday. Pre-trial conference on Thursday. So he got a real benefit. His guidelines range ended up being 30 level – or criminal history, six. It equated to 180 to 210. Had he not received that third level, it would have been, I believe, 188 to 235. So right there, he received a real tangible benefit because he got eight months shaved off his guidelines recommended sentence. So he received a real benefit, and I would point out that the court has – I'm sorry, that the government has already been deprived of its benefit by briefing and now arguing this case. But I do think that – and would pray that the court would vindicate the government's interest in adhering to its waivers. If there were no waiver and Johnson comes down to adversity, you're back to the August 19th separations issue, and that's the Shepard document. Am I right that the government's got to prove that they are on different occasions? The burden's on the government? Yes, the burden is on the government to – well, in Bookman and Taylor, this court said that the burden is on the government to establish the fact of the prior convictions. And the burden's on the defendant to prove constitutional invalidity. Correct. I would think burden back on government to show non-simultaneity, whatever the word is. Right. Non-simultaneity, I guess, is the term. But first of all, when I look to that issue, I see two primary disagreements between the parties here. One is the standard by which the government has to prove that. He points us to conclusive, and with all respect, I don't find that. He points to Shepard, and Shepard didn't control this issue on the point that he cites for it. I acknowledge there is a word conclusive that appears there. I don't think that it means what he is arguing that it means, but also this is a point in the Shepard opinion that isn't even enjoined by a majority of the court. If we look at post-Shepard, this court has never treated it as a burden that the government has to carry conclusively using Shepard documents. Fuller didn't require conclusive. Bookman and Taylor obviously didn't require conclusive proof. It's simply not there, and I would add that if conclusive is the standard, then it will be practically almost impossible to do it as long as charging documents say what they typically say, which is on or about a certain date. If I'm proving up two drug transactions, but one charged on or about June 1st, the other on or about June 3rd, I can't use Shepard documents to show conclusively that they didn't both happen on June 2nd, but I don't think that that is the government's burden. Now, the second issue is did the documents here satisfy that burden, and they certainly did so. With respect to the burglaries, as I argue in my brief, here the defendant acknowledged that on the same day he unlawfully entered the house of one victim and he kicked in the door of another victim's house with intent to commit burglary inside that house. And I would respectfully disagree with counsel. This case is very distinguishable from Fuller. In fact, this case is the case that the Fuller court was asking for when, of course my paraphrasing, they said all we have here are a couple of indictments. We sure wish we had additional Shepard documents because they could tell us whether or not these convictions were based on accomplice liability. Here we have those documents. We had judicial confessions, and in them Mr. Munoz said, I unlawfully entered that house. And he said, I kicked in that door with intent to commit burglary or theft inside. Now, in his reply, Mr. Munoz says, well, we ought to just apply to judicial confessions the same Texas standard of law that we apply to indictments, that any time that it says charges that you did this, implicit in that is what in federal terms we would say section 2 liability is implicit in it, that it could be accomplice liability or aiding and abetting. There are a couple of reasons why I don't think that makes sense. One, I've looked for it and I can't find that standard of law under Texas law. But its absence is certainly unremarkable because it would sort of undermine the different purposes that these documents serve. An indictment, of course, is notice to a defendant. This is the charge that we are charging you with, and it makes perfect sense to say when we say you committed this offense, understand that we're giving you notice that we may be saying you committed this offense, you aided and abetted or somehow were accomplice to this. The judicial confession serves a very different purpose. It is the factual support for a guilty plea. It is, in effect, a judicial testimony. And when Mr. Munoz said I kicked in that door of this victim and I unlawfully entered the house of this other victim, we wouldn't say, oh, well, really what he was saying when he gave this sworn testimony that he did this, really what he was saying was he aided and abetted someone else kicking in the door, or he encouraged someone else to unlawfully enter the house. He said he was the one that did that. And those documents, even if the burden is conclusive, those documents show that as a matter of logic, he could not have entered into one house unlawfully at the very same time, simultaneous to when he was kicking in the door attempting to enter into another house. So that takes care of the two burglaries. With respect to the evading in a motor vehicle, the district judge grappled with this issue and came to the very logical conclusion that Mr. Munoz couldn't have been fleeing from the police in a motor vehicle at the same time that he was kicking in one door and unlawfully entering into another house. And so the court did reach this very logical conclusion. And I would submit that there is additional proof in the Shepard documents to corroborate the district court's conclusion. On the judicial confessions at the top left of those, there is a spot where the district attorney fills in the code for the referring agency. And when we look at the judicial confessions on those three August 2008 convictions, what we see is that the two burglaries had one referring agency. The evading arrest had a different referring agency. And is that conclusive? I acknowledge it's not conclusive, but that corroborates, that is an indication in the Shepard documents that corroborates the district court's logical conclusion that these occurred in different jurisdictions and did not occur simultaneously. With respect to the conviction for attempted escape, this court held in Hughes that a completed escape is a violent felony because every escape scenario is a powder keg. And that's not my language, that's the court's language, that every escape scenario is a powder keg. And if an escape always has that potential for confrontation and injury, it certainly follows that a conviction for an attempted escape is the same because it more likely actually had that type of confrontation. The Supreme Court in James was dealing with attempted burglary. And the court noted that an attempted burglary, a conviction for attempted burglary, probably did involve that type of confrontation that they were concerned about. It probably never culminated into a completed burglary for that very reason. And the same thing goes with attempted escape. One thing I want to note, I think it's important because it's a point made in reply. Mr. Munoz would have this court speculate about, well, let's think about all the different ways that attempted escape might have occurred and just was never detected, never prosecuted, never resulted in a conviction. But I would point the court to James and specifically to page 204, and I beg the court's pardon for reading this, but it's an important point. There at page 204 the court said, but ACCA only concerns that subset of attempted burglaries where the offender has been apprehended, prosecuted, and convicted. So the court, the Supreme Court has told us we're not, thankfully I think, we don't have to speculate about all these offenses that were never detected, never prosecuted. Instead we look at, and ACCA is concerned with, those that resulted in real convictions. And when we look at those cases under Texas law that resulted in real convictions, we see that it normally does engender the same risk or actual confrontation that the court is concerned about when determining whether an offense is a violent felony or not. And I point really to the cases that I had cited in my brief where that actually occurred. That, I would submit, is the typical case of a conviction for attempted escape. And of course the judicial confessions in Mr. Munoz's attempted escape certainly corroborates that what he did was the typical attempted escape. When he admittedly ran past one person and attempted to run past a second person, presumably his attempt was thwarted at that point. Because an attempt to escape is a violent felony because it engenders that degree of potential confrontation and injury, it certainly follows that evading arrest on foot is because it is essentially the same type of conduct. The Supreme Court recognized in Sykes that fleeing a police officer is a direct challenge to the officer's authority, and in the typical case it dares the officer to give chase. And in Texas, as the district court pointed out, there are two necessary ingredients for that offense. An officer who is attempting to detain or arrest a person, and then the person's flight from the officer. Those are ingredients that are a recipe for confrontation and injury, certainly comparable to a burglary or an arson. And as I pointed out in my response of 28J letter from last week, I think the error in Mr. Munoz's argument on this point has to do with the fact that he is singularly focused on contrasting the risk of serious or catastrophic injury in a vehicular pursuit compared to a chase on foot. And I don't disagree with that comparison, but that's not the relevant comparison. The comparison is the risk of confrontation and physical injury, and it's not between vehicular pursuit and pursuit on foot, it's between pursuit on foot and burglary or arson. That's the relevant inquiry, and I would submit that a chase on foot certainly begs for a confrontation and risks injury to a bystander or the police officer. One quick note with respect to statistics, I know Mr. Page puts a lot of emphasis on them and wants the court to believe that they are a necessary threshold to finding a violent felony. But in Sykes, the court explicitly said statistics aren't dispositive. And in fact, I think using the court's language, they said there the numbers simply confirmed the common sense conclusion. It's the common sense conclusion that the district court applied, and it's a common sense conclusion that this court can apply that when you run from a police officer, when you attempt to escape from a secure detention facility, that behavior engenders, in the typical case, a risk of confrontation and injury. I see that my time is up. I pray that the court would dismiss this case on the appellate waiver. Thank you. May it please the court. We might understand the term statutory maximum punishment in the appeal waiver to mean the penalty that the parties just described in paragraph three. Even though those parties were using a different term in the waiver than they were using different words in the waiver than they were using in paragraph three. Or we might understand it to mean whatever the statutory maximum punishment turns out to be, the correct statutory maximum. Those are both plausible readings of the plea agreement. Here are the reasons to prefer the defendant's interpretation of the plea agreement. The first is that it's very well settled that ambiguity in a plea agreement is construed against the government as the drafter and as the party that typically has a superior bargaining position. Because the second reason is that this court has a strong preference for the merits when the result might be in a legal sentence. The third reason is that there is strong precedent that addresses this question both in the analogous situation of an agreement that says a sentence in excess of the guidelines and an unpublished case that is essentially on all fours here. And dicta in the published case that addresses this question very precisely. Because it would have been easier for the parties if they meant life simply to say life rather than statutory maximum punishment, which is a term that can embrace more than one numerical punishment. And because a sentence in excess, it would be a little bit silly for the parties to reserve the right to appeal the death penalty for possessing a gun. Hopefully we're not there yet. So the counsel points out, yes, this is standard language that we use in a plea agreement, but that's why it ought to mean the same thing from case to case. If we're using standard language in a plea agreement, then part of the benefit of doing that is that we can rely on precedent to determine what it means from case to case. So for those reasons, I would hope that the court would reach the merits of the case. And if Johnson comes out the way that I hope it does, whether we win the fuller issue or not, then we have one predicate in this case, and that's the burglary. All the others depend on the residual clause, depending on how Johnson's written, of course. I want to address the question about judicial confessions, which my colleague suggests distinguish this case from fuller. Three points about that. First of all, they track – the judicial confessions track the indictment, and they – therefore, it's not logical to believe that a judicial confession that says the same thing as the indictment does admits anything more than the indictment alleges. And if the indictment impliedly alleges that when it says the defendant kicked in a door, that either the defendant or a confederate kicked in the door, then the judicial confession isn't logically admitting any more than that. And a defendant who signed that judicial confession wouldn't believe that he's admitting anything more than what the indictment alleges. The case that I would cite for that proposition, that indictments impliedly allege parties' liability in Texas, is Pitts, and a very long line of cases that follow that. The second point I want to make about that is that let's say the judicial confessions do constitute an admission that the defendant personally performed the act of kicking in one door and then attempting to burgle another building. And let's say that those cannot be performed at the same time, assuming the defendant knows karate, then the fact that those acts are performed at different times doesn't mean the offenses have started at different times. I can kick in one door while a party is beginning the burglary of place number two, and then if we switch places, I've performed the act of burgling, of kicking in each door at different times, but the offenses have begun at the same time. So even if you read them the way that they do, they don't necessarily constitute an admission that they were performed at different times. That sounds, maybe that sounds a little far-fetched, but the standard is, you know, have these, Duenas-Alvarez have, is there a case in which it's occurred before under a jurisdiction that operates under the statute? And if you look at Murphy, which is cited in my brief, it's also cited in Fuller, and McElyea, which is cited in Fuller, those are cases where we have parties' liability in adjoining buildings, and essentially we have offenses that are occurring at the, that are occurring at the same, burglaries that are occurring at the same time. I see a matter of time. Thank you.